IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 24-159 |
| | ) | |
| DELBERT JAMES | ) | |

**Opinion and Orders on Pretrial Discovery Motions**

Defendant Delbert James is charged in a two-count Indictment with one count of possession with intent to distribute a quantity of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1(C), and one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Presently before the Court are Mr. James' Motion to Preserve Law Enforcement's Rough Notes (ECF No. 45), Motion to Provide Notice of Evidence That the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609 (ECF No. 46), Motion to Dismiss Count II of the Indictment (ECF No. 43), and Motion to Suppress Physical Evidence (ECF No. 44). The government has filed a Response to the Motions, to which Mr. James has filed a Reply. ECF Nos. 45 & 53. An evidentiary hearing was held on January 22, 2026, to address the Motion to Suppress Physical Evidence. ECF No. 57. The Motions are resolved as explained below.

## I.       Motion to Preserve Law Enforcement's Rough Notes

Mr. James requests that the Court order the government to direct all government agents and state and local law enforcement who participated in the investigation, arrest, and questioning of Mr. James to retain all rough notes and writings.

The United States Court of Appeals for the Third Circuit requires the government to retain rough notes and writings  In *United States v. Vella*, 562 F.2d 275 (1977), the Court of

Appeals held that "rough interview notes of [law enforcement officers] should be kept and produced so that the trial court can determine whether the notes should be made available to the defendant under the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), or the Jencks Act." *Id.* at 276. In *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), the Court of Appeals expanded the category of what must be retained to include rough reports; holding that "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced." *Id.* at 259. In *Ammar*, the Court acknowledged that a rough draft is not necessarily a Jencks Act statement until it is refined to the point where a finding can be made that the witness has "adopted or approved" the rough draft as a statement, such as where a law enforcement official presents a handwritten draft to a supervisor. *Id.*

The government acknowledges its obligation regarding the retention of law enforcement rough notes, and states that it has directed local law enforcement to preserve and retain their notes and writings. Gov. Resp. at 2-3. The government notes that it had no control over local law enforcement, and such agencies retention of notes, prior to the federal charges being instituted. Finally, the government does not oppose an Order requiring the preservation of rough notes and writings. Accordingly, the Court will grant the Motion.

**II.     Motion to Provide Notice of Evidence That the Government Intends to Use Under Federal Rules of Evidence 404(B) and 609**

Mr. James seeks to compel the government to provide notice, and disclose, all evidence of prior bad acts, uncharged misconduct, and/or impeachment evidence, prior to trial. The government indicates that, although it has already produced copies of Mr. James' criminal record and prior convictions, it intends to provide any notice related to Rule 404(b) and 609 in accord with the requirements of said rules.

Federal Rule of Evidence 609 is titled "Impeachment by Evidence of a Criminal Conviction," and concerns "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609. Rule 807 is the Residual Exception to the hearsay rule, which provides that, any hearsay statement sought to be introduced under Rule 807, "is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name— so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice." Fed. R. Evid. 807(b).

Rule 404(b) is titled "Other Crimes, Wrongs, or Acts," and specifies when such evidence is prohibited, when it is permitted, and directs the prosecution's obligations to notify the defense that it intends to introduce such evidence. As to "Prohibited Uses," Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). With respect to "Permitted Uses," Rule 404(b)(2) provides that evidence of prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Finally, Rule 404(b)(3)'s notice requirements provide as follows:

**(3) Notice in a Criminal Case**.  In a criminal case the prosecutor must:

**(A)** provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

**(B)** articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

3

> **(C)** do so in writing before trial – or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

The United States Court of Appeals for the Third Circuit requires that Rule 404(b) evidence may only be introduced at trial if the government "can demonstrate its admissibility." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). Admissibility of "evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose [that is, the evidence is proffered for a non-propensity purpose]; (2) be relevant [pursuant to Rule 402]; (3) satisfy Rule 403 [in that its probative value must not be substantially outweighed by its potential for causing unfair prejudice]; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 240 (3d Cir. 2010).

What constitutes "reasonable notice" of such material depends on "the circumstances and complexity of the prosecution." *United States v. Johnson*, 218 F. Supp. 3d 454, 462 (W.D. Pa. 2016). In general, courts have found that, "reasonable notice" under Rule 404(b) is in the range of seven to ten days or one to two weeks prior to trial. *United States v. Long-Parham*, 183 F. Supp. 3d 746, 750 (W.D. Pa. 2016); *United States v. Buckner*, 2020 U.S. Dist. LEXIS 5485, at *14–15 (M.D. Pa. Jan. 13, 2020). Here, the defense requests that it be given notice of said materials thirty days prior to trial. The case here does not at this time appear to be complex. The Indictment charges two counts. The alleged criminal activity and the evidence that was uncovered are all alleged to have occurred within a single residence on a single day. Therefore, the Motion will be granted to the extent that the Court will order that the government provide the appropriate notices fourteen days prior to trial.

### III.    Motion to Dismiss Count II of the Indictment

In Mr. James' Motion to Dismiss Count II of the Indictment, he argues that § 922(g)(1) is an unconstitutional regulation of the right to possess firearms in violation of the Second Amendment to the United States Constitution.

### A.  Background

Mr. James is charged with one count of possessing a firearm and ammunition, while knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) of Title 18 provides that "[i]t shall be unlawful for any person-(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; . . . ." 18 U.S.C. § 922(g)(1). The Indictment alleges that Mr. James has nine prior qualifying state convictions in the Court of Common Pleas of Allegheny County, Pennsylvania, and one in the United States District Court for the Western District of Pennsylvania. The prior convictions are as follows:

On October 13, 2009, in the United States District Court for the Western District of Pennsylvania, at criminal case number 2:08-146, Mr. James was convicted of Possession of a Firearm by a Convicted Felon.

On September 16, 1998, at criminal case number CP-02-CR-0007919-1998, in the Court of Common Pleas of Allegheny County, Mr. James was convicted of Criminal Trespass.

On April 17, 2000, at criminal case number CP-02-CR-0010786-1999, in the Court of Common Pleas of Allegheny County, Mr. James was convicted of Escape.

On September 14, 2009, at criminal case number CP-02-CR-0002794-2004, Court of Common Pleas of Allegheny County, Mr. James was convicted of Possession with Intent to Deliver a Controlled Substance.

On July 23, 2018, at criminal case number CP-02-CR-0006913-2016, in the Court of Common Pleas of Allegheny County, Mr. James was convicted of being a Person not to Possess a Firearm, Carrying a Firearm without a License, and Possession with Intent to Deliver a Controlled Substance.

On April 5, 2018, at criminal case number CP-02-CR-0001655-2017, in the Court of Common Pleas of Allegheny County, Mr. James was convicted of being a Person not to Possess a Firearm and Carrying a Firearm without a License.

Finally, on June 25, 2018, at criminal case number CP-02-CR-0007019-2017, in the Court of Common Pleas of Allegheny County, Mr. James was convicted of Fleeing or Attempting to Elude Officer.

The facts supporting the present § 922(g)(1) charge arose from the execution of a state search warrant, procured as a result of state Parole Agents unplanned home visit, at which the Agents observed certain items in the home and interacted with Mr. James. Upon execution of the search warrant, law enforcement recovered firearms, ammunition, and illegal controlled substances.

**B. Discussion**

Mr. James argues that § 922(g)(1) is unconstitutional as applied to him, and that § 922(g)(1) is unconstitutional on its face. Next, he argues that 922(g)(1) is unconstitutionally vague. Finally, Mr. James argues that § 922(g)(1) is an unconstitutional violation of the Constitution's Commerce Clause. Mr. James acknowledges that his Commerce Clause argument

is foreclosed by precedent, but he asserts it for preservation purposes. Mr. James supports his arguments by primarily relying on the Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Third Circuit's *en banc* decision in *Range v. Att'y Gen. United States*, 124 F.4th 218 (3d Cir. 2024), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025).

### 1.  As Applied Challenge

An "as applied" challenge contends that a law's "application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (citation omitted). In light of the *Range* decision, it is clear that Mr. James is one of the "people" protected by the Second Amendment, despite having a prior qualifying conviction. Next, the Court determines whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If the plain text does not cover the person's conduct, then the regulation at issue does not violate the Second Amendment. However, if the plain text does cover such conduct, then "the Constitution presumptively protects the conduct," and the burden shifts to the government to justify the constitutionality of the firearm regulation. *Id.*

As argued by the government, and conceded by Mr. James, his "as applied" challenge fails because the Third Circuit has held that Section 922(g)(1) is "constitutional as applied to convicts on parole or probation." *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025). Mr. James was on parole at the time of the instant charges, and thus his "as applied" challenge fails.

Alternatively, the "as applied" challenge also fails because his actual relevant conduct is not protected by the Second Amendment. Here, Mr. James was arrested for possessing a firearm

7

and ammunition and for illegal drug distribution. Law enforcement and the public have a safety interest in ensuring that persons not permitted to possess firearms, do not in fact have such firearms on their person. Mr. James' conduct of unlawfully possessing a firearm and ammunition, when he knew he was prohibited from possessing firearms and ammunition based on his prior offenses, establishes Mr. James as a person who is dangerous to the safety of the public and is disruptive to the orderly functioning of society. In addition, Mr. James' prior illegal drug distribution convictions and firearm offenses further support that he poses a physical danger to others, such that he is not protected by the Second Amendment. Under these circumstances, the Second Amendment's plain text does not protect Mr. James' conduct. *United States v. Rahimi*, 602 U.S. 680, 691 (2024); *Bruen*, 597 U.S. at 24.

Accordingly, because Mr. James was on parole at the time of the instant charges, and because his actual conduct was not protected by the plain text of the Second Amendment, his as applied challenge fails.

### 2. Facial Challenge

Mr. James next argues that § 922(g)(1) is unconstitutional on its face. "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted). "A party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Here, the facial challenge fails for two reasons. First, because the Second Amendment does not cover a person on parole, Mr. James cannot possess firearms or ammunition. Second, the above discussion of Mr. James' actual conduct and the Court's finding that § 922(g)(1) is

constitutional as applied to Mr. James, establishes that § 922(g)(1) is not unconstitutional in all cases. Accordingly, Mr. James' facial challenge to § 922(g)(1) fails.

### 3. Vagueness

Mr. James' vagueness challenge also fails. "A statute is void on vagueness grounds if it (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (quoting *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir.2008)). The statute is clear in delineating the conduct that bars a person from possessing a firearm or ammunition in violation of § 922(g)(1). A person who has been convicted of a crime is able to understand whether the conviction for such crime is punishable by imprisonment for more than one year; and therefore, knows that such conviction makes it a crime for him to possess a firearm or ammunition in violation of § 922(g)(1). Criminal statutes clearly define crimes and prescribe corresponding penalties. Information that a prior conviction carries a potential punishment of imprisonment for more than one year, is readily available. Where the penalty for a crime of conviction includes punishment for a term of imprisonment of more than one year, then § 922(g)(1) bars that person from possession of a firearm or ammunition. Moreover, § 922(g)(1) requires the government to prove that the defendant actually *knew* that he had been convicted of a crime punishable by imprisonment for a term exceeding one year. Such a *mens rea* element, "makes it less likely that a defendant will be convicted for an action that he or she committed by mistake." *Fullmer*, 584 F.3d at 152 (citing *Gonzales v. Carhart*, 550 U.S. 124, 149, 127 (2007)). Thus, Mr. James' vagueness challenge to § 922(g)(1) fails.

9

### 4.  Commerce Clause

Finally, Mr. James' argument that § 922(g)(1) is an unconstitutional violation of the Constitution's Commerce Clause is denied, as the argument is foreclosed by binding precedent. *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001).

### 5.  Conclusion

For the reasons explained above, Mr. James' argument, that 18 U.S.C. § 922(g)(1) is an unconstitutional regulation of the right to possess firearms in violation of the Second Amendment, fails. Accordingly, his Motion to Dismiss Count II of the Indictment, charging him with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), will be denied.

### IV.    Motion to Suppress Physical Evidence

Mr. James has filed a Motion to Suppress physical evidence obtained from his residence during a parole search of his home, he argues that the search was not supported by reasonable suspicion. The Court held an evidentiary hearing on the Motion to Suppress on January 22, 2026, at which testimony was provided by Pennsylvania State Parole Agent Casey Barber.

### A.  Relevant Facts

The Pennsylvania Board of Probation and Parole granted parole to Mr. James on September 6, 2023. Ex. 2, Pennsylvania Parole Board Notice of Decision, Sept. 6, 2023. The Board's Notice of Decision includes the following relevant conditions of supervision:

- Mr. James must undergo a drug/alcohol evaluation,
- He must undergo random drug tests and achieve negative results,
- He must not consume, or possess, alcohol, and
- He shall not possess ammunition or drug paraphernalia.

*Id.* at 2. Mr. James' corresponding "Order to Release on Parole," formally states the same conditions of parole, among others, as the above Special Conditions cited in the Board's Notice of Decision. Ex. 1, Order to Release on Parole, Sep. 6, 2023, at 2.

Supervision of Mr. James came under Agent Barber's authority when Mr. James was approved to move to a new residence, located within Agent Barber's geographical area of supervision. The approval to move to the new residence was granted on December 27, 2023. Ex. 4. The new residence was owned or leased by Mr. James' partner at the time, Latoya James. Prior to authorizing the move, Agent Barber provided Ms. James with a Home Provider Agreement Letter, which Ms. James signed on December 20, 2023. Ex. 3. In the Agreement Letter, Ms. James stated her understanding that parole supervision staff may conduct unannounced home visits at any time. Ms. James also authorized parole supervision staff to search the residence for Mr. James or for suspected violations of the conditions of supervision. *Id.* Ms. James further certified that there were no firearms in the residence and that no firearms would be brought into the residence while Mr. James lived in the home. *Id.*

On January 3, 2024 at approximately 5:00 p.m., Agent Barber and her colleague, Parole Agent Pipik, conducted an initial visit to the residence. After the Agents knocked on the front door and announced they were State Parole Agents, there was a five-to-seven-minute delay before Mr. James opened the door. Agent Barber testified that the delay in opening the door provided her with authority to break into the residence, but for safety reasons she did not do so. When Mr. James opened the door, he was the only person visible. Agent Barber did not know if anyone else was in the home. As she entered the residence, Agent Barber observed empty, half full, and full alcohol bottles in plain view in the living room to the left of the entrance. Mr. James explained to Agent Barber that the bottles were left over from a New Year's Eve party. Agent

11

Barber testified that the presence of the alcohol bottles was a violation of Mr. James' parole conditions and provided cause for searching the entire residence. Agent Barber chose not to search the residence at that time because it was her first time making a visit and she still did not know who else was in the house.

Agent Barber proceeded to conduct a home visit, and asked Mr. James to show her his bedroom. Mr. James took Agent Barber to a bedroom that appeared to be a teenage girl's room. He explained that he and Latoya James had been fighting, and he was moving to a different bedroom. Mr. James also asked Agent Barber to not enter his former bedroom as there was a child sleeping in that room. Agent Barber saw the sleeping child and did not enter the bedroom at that time, but she testified she intended to enter that bedroom at some point during the inspection.

Next, Agent Barber conducted a urinalysis drug test on Mr. James, which registered positive for methamphetamine and amphetamines. Mr. James told Agent Barber that he had previously taken ecstasy on his birthday and on New Year's Eve. Agent Barber testified that, based upon the positive drug test, she could have received permission from her superior to search the residence. However, she decided to do a full walk-through of the house first.

Mr. James was asked to take the Agents to the basement. On a shelf, in the basement of the house Agent Barber saw, in plain view, a Smith & Wesson box containing a loaded firearm and box of ammunition. Mr. James' adult son, Walter Banks, told the agents that he lawfully owned the firearm and ammunition. Mr. Banks, however, did not have paperwork to verify his lawful ownership. Agent Barber testified that, in response, Mr. James told Mr. Banks that he should not have a gun in the house, as it is not allowed. At that point Agent Barber detained both Mr. James and Mr. Banks, and had them sit in the kitchen. Agent Barber called her supervisor to

seek authorization to search the house. Agent Barber was granted permission to search the residence, and the supervisor also dispatched additional agents to the residence to assist. Before conducting the search, Agent Barber and her partner waited for the other agents to arrive.

Because of the presence of a loaded firearm of unknown provenance, Agent Barber also contacted the Stowe Township police department to come to the residence. Stowe police officers arrived within ten minutes. The officers checked the registration of the Smith and Wesson firearm and found that it was lawfully registered to Mr. Banks. The Stowe police determined that they had no basis to apply for a search warrant, as they knew that the firearm was lawfully owned.

The Parole Agents, however, proceeded with a search of the house as previously authorized by their supervisor, based upon the multiple violations of parole conditions. Agent Barber entered the bedroom where she had previously observed a child sleeping. In attempting to wake the child, Agent Barber moved the comforter that was covering the child, and she observed two loaded firearms under the comforter. Agents also found eleven bricks of heroin and ammunition in a hamper in the hallway. The Stowe police were informed of the discovery of the firearms, ammunition, and heroin. The Stow police department then obtained a search warrant for the residence. The search resulted in finding two additional firearms, multiple cell phones, a scale with residue, two small bags of marijuana, and, in total, four boxes of ammunition. Search Warrant, Inventory of Seized Property, ECF No. 50-1.

**B. Discussion**

Mr. James argues that the search of the residence was in violation of the Fourth Amendment to the United States Constitution, and in violation to the Pennsylvania Board of

Probation and Parole's consent to search form, because the Agents lacked reasonable suspicion to support a search.

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures, in part, by requiring that "a warrant be obtained upon a showing of probable cause before a residence is searched." *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005). "But when a parolee is involved and has signed a consent agreement . . . the parolee's reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased." *Id.* In such cases, an officer may conduct a warrantless search, based upon less than probable cause, where the officer "has a reasonable, articulable suspicion that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable. *United States v. Knights*, 534 U.S. 112, 121 (2001). Reasonable suspicion is evaluated under "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "This standard requires us to credit reasonable deductions drawn by police in light of their experience and training." *United States v. Bey*, 911 F.3d 139, 145 (3d Cir. 2018) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "The ultimate question is whether the record is sufficient to establish that police had a reasonable suspicion based on articulated facts that would justify the search . . . ." *Id.* (citing *Cortez*, 449 U.S. 417-18)).

Mr. James argues that the Parole Agents lacked reasonable suspicion to search the residence. Mr. James argues that any reasonable suspicion that Mr. James was in violation of his parole dissipated once the Stowe Police Department confirmed that Mr. Banks was the lawful

14

registered owner of the firearm and ammunition found in the Smith and Wesson box in the basement. Mr. James further argues that the Agents' observation of bottles of alcohol in plain view and Mr. James' positive test for a controlled substance, also do not support a finding that reasonable suspicion to search the home existed. Mr. James explains that the Agents chose not to conduct a search after discovering said violations, and instead continued with the home inspection. He also argues that the presence of the alcohol bottles does not create reasonable suspicion to search for *more* evidence of alcohol possession or consumption, because the only evidence of alcohol possession or consumption was the already discovered bottles of alcohol. Finally, Mr. James argues that the Agents did not conduct a search after his positive drug test and admission of use because reasonable suspicion did not exist. Specifically, he argues that the Agents were required to have reasonable suspicion that *more* evidence of drug use would be found in the home, and they did not, because the type of drug Mr. James admitted he consumed – ecstasy – is a party drug not typically kept in the home.

During the Parole Agents home inspection of Mr. James' new residence, they observed multiple violations of Mr. James' conditions of supervision. The observations were based upon specific articulable facts. First, they observed multiple bottles of alcohol in the living room. Mr. James has a parole condition that he shall not consume or possess alcohol. Second, Mr. James tested positive for methamphetamine and amphetamines, and admitted that he had taken the drug ecstasy. Mr. James is required to achieve negative results from drug tests, and he is prohibited from consuming illegal controlled substances without a lawful prescription. Third, the Agents observed a loaded firearm and ammunition in the basement. Mr. James is not permitted to reside in a residence that contains any firearms. It was after the discovery of the firearm that Agent

Barber contacted her supervisor for permission to search the residence and, for safety reasons, the Agents detained Mr. James and Mr. Banks.

Each of the above observed violations independently support that the Agents had reasonable suspicion to believe that Mr. James had violated a condition of his parole, and that evidence of further violations may be found in the residence. Mr. James' argument, that because the alcohol bottles were only present in the living room does not support reasonable suspicion that additional evidence of alcohol would be found in the house, is unpersuasive. The presence of the bottles are a violation of Mr. James' conditions, and their presence in the house supports the conclusion that additional evidence of alcohol possession and/or computation would likely be found in the residence. Similarly, Mr. James admitting that he had consumed a party drug, ecstasy, does not dissipate reasonable suspicion that the Agents are likely to find additional evidence of possession, consumption, or distribution of controlled substances in the residence. An Agent is not required to presume that a parolee's involvement with controlled substances is strictly limited only to the discrete controlled substance the parolee admitted to consuming.

Mr. James also argues that reasonable suspicion dissipated once the Agents learned that the firearm and ammunition in the basement were lawfully registered to Mr. Banks, and when the Stowe police did not apply for a search warrant. As an initial response, this argument does not take away the established reasonable suspicion based upon the presence of alcohol, the positive drug test, and the admission of drug use. The presence of the firearm and ammunition alone, however, does support reasonable suspicion to conduct a search, as Mr. James is not permitted to reside in a house with firearms. Further, the fact that the firearm was lawfully registered to Mr. Banks also does not dissipate reasonable suspicion, as the presence of a firearm provides reasonable suspicion that evidence of other firearms and ammunition are likely to be

16

found in the residence. Moreover, the presence of a loaded firearm rightfully raised safety concerns, which would include a concern that other firearms were in the house. Mr. James admission of illegal drug use alone is sufficient to support a search of the residence based upon reasonable suspicion. Finally, the fact that the Stowe police chose not to apply for a search warrant, or otherwise participate in the search of the home, are actions secondary to the Parole Agents performance of their duties. In the performance of their duties, the Parole Agents were going to search the residence, as authorized by their supervisor, regardless of what the Stowe police chose to do. All that the Stowe police learned, on their own, was that a lawfully registered firearm was discovered in the home. The Stowe police had no reason to get involved in the Parole Agents' search of a parolee's residence in the normal course of their duties in the circumstances presented at the time.

Although Agent Barber had reasonable suspicion to search as soon as she observed the alcohol bottles; and then again she had separate reasonable suspicion to search after the positive drug test and admission of drug use. She exercised her discretion, and based upon her experience and training, she continued the home inspection. Her decision to continue the inspection, even though she had observed violations of parole, does not remove the reasonable suspicion gleaned from her observed violations. When Agent Barber observed the firearms and ammunition; however, she ceased the inspection and obtained permission to search the home. Her decision to pause the home inspection was reasonable based upon valid safety concerns. The record evidence here establishes, by a preponderance of the evidence, that the Parole Agents had reasonable suspicion to conduct a search of the residence.

### C. Conclusion

The Court finds that there was no Fourth Amendment violation arising from the Probation Agents' search of the residence. The search was based upon specific articulable facts supporting reasonable suspicion that multiple violations of parole conditions had occurred, and that evidence of further violations or criminal activity would likely be found in the residence. Therefore, all evidence obtained from the search of the residence was obtained lawfully. Accordingly, the Motion to Suppress Evidence will be denied.

### V.    Conclusion

Based upon the foregoing reasoning, this Court enters the following Order.

### ORDER

AND NOW, this 12th day of March 2026, for the reasons explained above, Delbert James' Motions are resolved as follows:

1. The Motion to Preserve Law Enforcement's Rough Notes (ECF No. 45) is GRANTED. The government shall direct all government agents and state and local law enforcement who participated in the investigation, arrest, and questioning of Mr. James to retain all rough notes and writings

2. The Motion to Provide Notice of Evidence That the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609 (ECF No. 46) is GRANTED to the extent that the government shall provide the appropriate notices fourteen days prior to trial.

3. The Motion to Dismiss Count II of the Indictment (ECF No. 43) is DENIED.

4. The Motion to Suppress Physical Evidence (ECF No. 44) is DENIED.

 __s/*Marilyn J. Horan*
Marilyn J. Horan
United States District Court Judge

18